**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **THE ESTATE OF ALFONSO C. ASKEW,** By Special Administrator Nicholas D. Laudato, c/o Friedman Gilbert + Gerhardstein 50 Public Square, Suite 1900 Cleveland, OH 44113, | Case No. |
| | Judge |
| **Plaintiff,** | **COMPLAINT AND JURY DEMAND** |
| vs. | |
| **TRUMBULL COUNTY,** c/o Trumbull County Prosecutor's Office Trumbull County Administration Building, 4th Floor 160 High Street, NW Warren, Ohio 44481 | |
| and | |
| **DR. PHILLIP MALVASI D.O. LLC,** **PHILLIP MALVASI, D.O.,** **TAYLOR SIMMONS,** **BREE BRIGHT,** **JESS JOHNSON,** **CARLA AHART,** and **NURSE AND/OR MEDICAL ASSISTANT JB,** 1071 Youngstown Warren Road Niles, Ohio 44446 | |
| and | |
| **DOUG MACHINGO,** c/o Trumbull County Prosecutor's Office Trumbull County Administration Building, 4th Floor 160 High Street, NW Warren, Ohio, 44481 | |
| **Defendants.** | |

1.      This civil rights and medical malpractice action concerns Defendants' failure to provide adequate medical care to Alfonso Askew while he was incarcerated at the Trumbull County Jail ("Jail") in November 2020.  Mr. Askew suffered a slow and painful death, and was repeatedly denied the opportunity to be assessed, evaluated, or treated by qualified medical practitioners despite his excruciating pain, obvious physical symptoms, and repeated requests for care. As a result, he suffered an unnecessary, preventable, and painful death over a period of days, finally passing on November 13, 2020. Plaintiff brings this action on behalf of Alfonso Askew to secure fair compensation and to encourage Defendants to provide adequate medical treatment to people in custody in the Trumbull County Jail in the future.

### JURISDICTION AND VENUE

2.      The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C. §1983 et seq; the Judicial Code, §§1331 and 1343(a); and the Constitution of the United States. Supplemental jurisdiction over related state law claims is invoked pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in this District under 28 U.S.C. 1391(b). The Parties reside, or, at the time of the events took place, resided in this judicial district, and the events giving rise to Plaintiff's claim also occurred in this judicial district.

### PARTIES

4.      Plaintiff Nicholas D. Laudato is the duly appointed Special Administrator for the Estate of Alfonso C. Askew. Nicholas D. Laudato was appointed as the Special Administrator of the Estate of Alfonso C. Askew on November 9, 2021 by the Trumbull County Probate Court in Case No. 2021 EST 1169.

2

5.      Defendant Trumbull County, Ohio ("County") is a unit of local government established under the laws of the State of Ohio.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

6.      Defendant Dr. Phillip Malvasi D.O. LLC ("Malvasi LLC") is an Ohio corporation doing business in Trumbull County, Ohio.  At all times relevant to this case, Malvasi LLC contracted with Defendant Trumbull County and/or Phillip Malvasi, D.O. to provide and/or provided medical care to people in custody in the Trumbull County Jail.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.

7.      Phillip Malvasi, D.O. ("Dr. Malvasi"), is, on information and belief, the principal and/or employee and/or agent of Malvasi LLC, and at all times relevant to this case, contracted with Defendant Trumbull County to provide and/or provided medical care to people in custody in the Trumbull County Jail.  Dr. Malvasi is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  He is sued in his individual and official capacities.

8.      Defendants Medical Assistants Taylor Simmons, Bree Bright, Jess Johnson, as well as Carla Ahart, LPN, and Nurse and/or Medical Assistant JB (collectively, "Medical Assistant and Nurse Defendants") are, on information and belief, employees and/or agents of Malvasi LLC and/or Dr. Malvasi.  Defendants are "persons" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  They are sued in their individual and official capacities.

9.      Defendant Doug Machingo is, on information and belief, employees and/or agents of Trumbull County, Ohio, who was at all times relevant to this case a correctional officer in the Trumbull County Jail.  Defendant is a "person" under 42 U.S.C. § 1983 and at all times relevant to this case acted under color of law.  He is sued in his individual and official capacities.

3

## FACTS

10.     In November 2020, Alfonso Askew was 48 years old, and a loving husband to Stacey Askew. Alfonso and Stacey had five children together, and both Alfonso and Stacey each had one child from previous relationships. Alfonso was a father to all of these children. Alfonso's and Stacey's family was loving and tight-knit.

11.     On November 6, 2020, after allegedly violating his probation for a drug-related conviction, Mr. Askew was booked into the Trumbull County Jail as a non-violent, pre-trial prisoner.

12.     Shortly after he arrived in the Jail, Mr. Askew's health began to deteriorate.

13.     On November 9, 2020, Mr. Askew was taken for a urinalysis, which produced abnormal results, including the presence of blood in his urine.

14.     However, when medical staff at the jail received those results, Mr. Askew was not referred to a doctor or higher-level practitioner for evaluation or treatment at that time.

15.     The same day, at approximately 4 PM, Mr. Askew submitted a medical care request stating that he had "real bad pain" and thought he had a gallstone.

16.     Medical Assistant/Nurse JB responded at approximately 6 PM stating merely that Mr. Askew was "[a]lready brought down for [urinalysis]. Doctor says to keep pushing plenty of fluids."

17.     Though Dr. Malvasi and Medical Assistant/Nurse JB were aware of his symptoms, Mr. Askew was not referred to a doctor or higher-level practitioner for assessment, evaluation, or treatment at that time. Without evaluating Mr. Askew, Dr. Malvasi provided no direct and immediate medical assistance and instead merely directed Mr. Askew to push fluids.

4

18.     But Mr. Askew's health was rapidly worsening. He knew that he was seriously ill. Mr. Askew stated on a phone call that day that, "I'm in this place dying ... I have to go to the hospital. .. pissing blood ... I'm here sick, man."

19.     Mr. Askew was not provided with any opportunity to report his excruciating pain and obvious physical symptoms to a doctor or higher-level practitioner for assessment, evaluation, or treatment.

20.     From November 9 through 10, 2020, Mr. Askew's health deteriorated and his complaints concerning his serious medical needs, including complaints of severe pain and blood in his urine, remained unevaluated and untreated. He was not seen or evaluated by a doctor or higher-level practitioner. No nurse or medical assistant in the Jail assessed him, or contacted a doctor or higher-level practitioner on his behalf.

21.     From November 9 through 10, 2020, despite their awareness of Mr. Askew's abnormal results and symptoms, neither Dr. Malvasi nor Medical Assistant/Nurse JB, nor any other medical staff member, checked on or directed other medical staff to check on Mr. Askew, followed up on his complaint or directed other medical staff to follow up, monitored his symptoms or directed other medical staff to monitor his symptoms, or sought or conducted further evaluation or treatment in relation to his symptoms or directed other medical staff to do so.

22.     On November 11, 2020, Correctional Officer ("CO") Bernice Cintron spoke to Mr. Askew. She wrote an incident report that that Mr. Askew reported difficulty breathing during the early morning hours and had been trying to get ahold of the nurse.

23.     Though Mr. Askew had continued to deteriorate, his attempts to reach a nurse to be assessed, evaluated, or treated for his complaints concerning his serious medical needs had been

unsuccessful through November 11, 2020.  He had been suffering excruciating pain and obvious physical symptoms.

24.    CO Cintron called the medical unit and advised Medical Assistant Taylor Simmons about the situation.

25.    Subsequently, at around 2:45 AM, Medical Assistant Simmons responded and evaluated Mr. Askew in the presence of CO Dearmitt.

26.    Medical Assistant Taylor Simmons corroborated CO Cintron's report, stating in a November 11, 2020, progress note that CO Cintron called Simmons about Mr. Askew, and reported to Simmons that Mr. Askew complained of "not being able to breathe."

27.    During Simmons' evaluation, Mr. Askew's vitals were recorded and he reported to Simmons that he "had a hernia in his pelvic area."

28.    Medical Assistant Simmons noted that there was a "small protrusion approximately the size of a quarter," and stated that she would "advise Dr. Malvasi" and "continue to monitor."

29.    However, Simmons did not return to monitor Mr. Askew until she was called again later in the day by another CO to see Mr. Askew. She did not refer him for immediate or timely evaluation or treatment by a higher-level practitioner or doctor.

30.    Dr. Malvasi likewise provided no direct and immediate medical assistance and Mr. Askew was not referred to a doctor or higher-level practitioner to evaluate or treat his symptoms, complaints, and serious medical needs.

31.    But Mr. Askew continued to deteriorate after this, and suffered excruciating pain and obvious physical symptoms.

32.    When Medical Assistant Simmons was called again, to see Mr. Askew, this time by CO O'Brien, O'Brien stated told Simmons that Mr. Askew "is in pain & [Medical Assistant

Simmons] must see him now." Medical Assistant Simmons saw Mr. Askew approximately eight minutes later.

33.     When Medical Assistant Simmons entered his cell, Mr. Askew was "bent over saying he was in a lot of pain."  Mr. Askew showed Medical Assistant Simmons the hernia "in his pelvic area," which appeared to Simmons to be "larger than it was previously."

34.     Medical Assistant Simmons called Dr. Malvasi and LPN Carla Ahart and advised them of the situation.

35.     However, neither Dr. Malvasi nor LPN Carla Ahart provided direct or immediate medical assistance to Mr. Askew.  Dr. Malvasi, LPN Ahart, and Medical Assistant Simmons— despite her knowledge of his ongoing and worsening symptoms—all failed to refer Mr. Askew to a doctor or higher-level practitioner to assess, evaluate, or treat his symptoms, complaints, and serious medical needs.

36.     But Mr. Askew continued to deteriorate after this, and suffered excruciating pain and obvious physical symptoms.

37.     At around 2:00 PM that day, Mr. Askew complained of stomach issues to Jail correctional staff, who in turn notified the medical staff on duty. No medical staff assessed him at this time, however.

38.     Mr. Askew continued to deteriorate.  He suffered excruciating pain and obvious physical symptoms.

39.     Later the same day, at around 4:00 PM, CO Joseph Lynn overheard Mark Reed, who was also in custody at the Jail, as he told CO Anthony O'Hara that Mr. Askew was in distress and needed medical attention. CO Joseph Lynn stopped his tour and went to speak with Mr. Askew.

40.     CO Lynn found Mr. Askew in his cell, nude and sweating profusely. He appeared to CO Lynn to be breathing sharply as if in pain and was sweating heavily. Mr. Askew stated that he was having stomach pains and his abdomen felt tight. When CO Lynn asked him to lie down, Mr. Askew stated that laying on his bunk caused him pain and asked to stand instead. He advised CO Lynn that he had fallen at work the day before being arrested.

41.     CO Joseph Lynn called Medical Assistant Taylor Simmons and reported this information to Simmons. Lynn stated to Simmons that Mr. Askew needed to be assessed.

42.     Despite her knowledge of his ongoing and worsening symptoms, Medical Assistant Simmons told CO Lynn that she had just seen Mr. Askew, and declined to reassess him. She told CO Lynn that Mr. Askew was already assessed, ibuprofen was ordered, and he was on Dr. Malvasi's list.

43.     Medical Assistant Simmons provided no direct and immediate medical assistance, and did not refer Mr. Askew to a higher-level practitioner or physician to evaluate or treat his symptoms, complaints, and serious medical needs.

44.     But Mr. Askew continued to deteriorate after this. He continued to suffer excruciating pain and obvious physical symptoms.

45.     Shortly thereafter, while walking back to the booking area at approximately 4:20 PM, CO Joseph Lynn saw Medical Assistant Jess Johnson. CO Lynn told Johnson that he felt Mr. Askew needed to be assessed. Medical Assistant Johnson told Lynn that she would check on Mr. Askew after she was updated by her department.

46.     Subsequently, Medical Assistant Jess Johnson noted in Mr. Askew's progress notes that she saw him. She wrote that "[Mr. Askew] stated stomach was upset. I advised he was up for Dr. and put request in he said ok."

47.    However, Medical Assistant Johnson provided no direct and immediate medical assistance at that time, and did not refer Mr. Askew to a higher-level practitioner or physician to evaluate or treat his symptoms, complaints, and serious medical needs.

48.    But Mr. Askew continued to rapidly deteriorate after this. He continued to suffer excruciating pain and obvious physical symptoms.

49.    Mr. Askew spoke to his wife, Stacey Askew, on the phone that day. He told her, "I'm dying ... my stomach is killing me ... Oh my god I'm in so much pain."  He told her that jail staff "weren't doing anything" about his serious medical issue.

50.    Stacey called the jail multiple times to the medical unit and the correctional staff.

51.    In the medical unit, Stacey left many messages, saying something was terribly wrong with her husband and asking that they see him and call her back. No one called her back.

52.    Medical Assistant Jess Johnson answered Stacey's call on at least one occasion. Johnson told Stacey that she gets "these calls all the time and inmates use that as an excuse to get out of their cells."

53.    After that call, Johnson made a progress note reporting Stacey's call and Mr. Askew's complaint that Jail staff "weren't doing anything."

54.    But, despite her knowledge of his ongoing and worsening symptoms, Medical Assistant Johnson again provided no direct and immediate medical assistance to Mr. Askew at that time, and again did not refer Mr. Askew to a higher-level practitioner or physician to evaluate or treat his symptoms, complaints, and serious medical needs.

55.    Stacey also spoke to correctional officers during this time. She repeatedly reported that something was terribly wrong with her husband. They repeated that they would pass it onto the medical staff.

56.     But Mr. Askew continued to rapidly deteriorate after this. He continued to suffer excruciating pain and obvious physical symptoms.

57.     Later on, around 11:10 PM, Mr. Askew told CO Doug Machingo that he was not feeling well and had vomited and there was blood in the vomit. Officer Machingo checked and stated he did not see blood in the vomit and told Mr. Askew to hit the intercom and ask for Machingo if he needed anything.

58.     CO Machingo acted improperly as a gatekeeper, preventing Alfonso Askew from accessing adequate health care from medical doctors or other appropriate higher-level practitioners. Machingo failed to contact medical staff to report Mr. Askew's complaint and failed to provide Mr. Askew with access to medical care, including assessment, evaluation, and treatment for his serious medical needs.

59.     Mr. Askew continued to rapidly deteriorate after this. He continued to suffer excruciating pain and obvious physical symptoms.

60.     Only about thirty minutes later, Mr. Askew hit the intercom and told CO Cullins that he was "pissing blood and expelling blood and that he needed help." Cullins told Mr. Askew that he would notify medical.

61.     CO Cullins then notified Medical Assistant Bree Bright that Mr. Askew was complaining that he was "pissing blood an expelling blood" but Bright declined to assess Mr. Askew and told Cullins that Mr. Askew was up to see the doctor in the morning.

62.     With this response, Medical Assistant Bright provided no direct and immediate medical assistance at that time, and did not refer Mr. Askew to a higher-level practitioner or physician to evaluate or treat his symptoms, complaints, and serious medical needs.

63.     CO Cullins relayed the information from Medical Assistant Bright to Mr. Askew.

64.     But Mr. Askew continued to rapidly deteriorate after this. He continued to suffer excruciating pain and obvious physical symptoms.

65.     Overnight, at around 3:30 or 3:45 AM on November 12, 2020, Mr. Askew again activated his intercom and stated to CO Cullins that he needed help. Before Cullins could respond, Mr. Askew fell forward, slamming his hand against the cell door.

66.     CO Cullins turned on the cell light and yelled Mr. Askew's name, but Mr. Askew did not respond. Cullins requested that CO Doug Machingo go check on Mr. Askew. When Machingo arrived, he found blood in the toilet in Mr. Askew's cell. Machingo told Cullins that he saw blood in the toilet, "quiet [sic] a bit of it," and Mr. Askew was laying on the floor by the toilet.

67.     CO Cullins called Medical Assistant Bree Bright again, and told her what Machingo had told him.

68.     When Medical Assistant Bree Bright arrived, Officer Doug Machingo accompanied her while she saw Mr. Askew at his cell. Mr. Askew told Bright that his stomach was hurting and that he was "pissing and expelling blood." Bright asked Mr. Askew if he took anything, and he told her no.

69.     Though Machingo verified Mr. Askew's complaint when Machingo said that he saw "color" in the vomit, Bright declined to evaluate or send Mr. Askew out to the hospital, or to call a qualified medical practitioner.

70.     Medical Assistant Bright instead informed Mr. Askew that he was up to see the doctor if he came in during the morning, and would right an order for medication pass for something that would help coat his stomach. She told Mr. Askew that she saw dark bile, not blood.

71.     In her late-entry medical progress note about this interaction on November 12, 2020, Medical Assistant Bree Bright stated that "talking [with] inmate Askew he was committing

11

due to his [complaint of] upset stomach. [Inmate] thought he was throwing up blood. I could not fully tell what a brownish discoloration. [Inmate] stated that he did eat some of his tray but he is unable to keep it down."

72.     In another late entry from that day by Medical Assistant Bree Bright, she stated that "I was called to T2 for [inmate] [complaint of] upset stomach, offered Maalox, [inmate] said ok and was left."

73.     Despite her knowledge of his ongoing and worsening symptoms, Medical Assistant Bright provided no direct and immediate medical assistance to Mr. Askew at that time, and did not refer Mr. Askew to a higher-level practitioner or physician to evaluate or treat his symptoms, complaints, and serious medical needs.

74.     Mr. Askew continued to rapidly deteriorate after this. He continued to suffer excruciating pain and obvious physical symptoms.

75.     At around 5:35 AM, CO Doug Machingo again saw vomit with "color" in the toilet in Mr. Askew's cell.

76.     Despite his knowledge of Mr. Askew's ongoing and worsening symptoms, CO Machingo acted improperly as a gatekeeper, preventing Mr. Askew from accessing adequate health care from doctors or other appropriate higher-level practitioners. Machingo failed to contact medical staff to report Mr. Askew's complaint and failed to provide Mr. Askew with access to medical care, including assessment, evaluation, and treatment for his serious medical needs.

77.     Alfonso Askew continued to suffer extraordinary and excruciating pain and obvious physical symptoms. His condition continued to rapidly worsen.

78.     From November 10 through 11, and into the morning of November 12, despite their knowledge of Mr. Askew's symptoms and complaints, Dr. Malvasi, Medical Assistant/Nurse JB,

Medical Assistant Simmons, Medical Assistant Jess Johnson, Medical Assistant Bree Bright, and LPN Carla Ahart all failed to check on or direct other medical staff to check on Mr. Askew, to follow up on his complaints or direct other medical staff to follow up, to monitor his symptoms or direct other medical staff to monitor his symptoms, and to seek or conduct further evaluation in relation to his symptoms or direct other medical staff to do so.

79.     At approximately 9:50 AM on November 12, 2020, CO John Greene observed Mr. Askew and spoke to him on the intercom, when Mr. Askew asked to be let out of his cell to have a shower. CO Greene did not obtain medical care for Mr. Askew at that time. CO Greene stated that he would let Mr. Askew out of his cell to shower during his watch tour.

80.     Just after 10 AM, CO Greene went to Mr. Askew's cell and informed him that he could come out to use the phone and shower. But Mr. Askew did not respond.

81.     CO Greene looked into the cell and saw that Mr. Askew was non-responsive. Mr. Askew was in cardiorespiratory arrest.

82.     CO Greene called for medical assistance, and Medical Assistant Taylor Simmons responded to the cell, along with several other COs.  Simmons began resuscitative efforts and the officers took turns doing CPR on Mr. Askew until EMS arrived and took Mr. Askew to the Emergency Department.

83.     Once at the hospital, Mr. Askew remained unresponsive, and ventilator and vasopressor dependent. Mr. Askew was admitted to the ICU.

84.     In an attempt for life-saving intervention, an exploratory laparotomy was performed and then Mr. Askew was transferred to the CCU in "grave condition."

85.     The next morning, on November 13, 2020, Alfonso Askew died in the hospital after extensive suffering.  He was 48 years old.

86.     Mr. Askew had suffered a non-traumatic rupture of a peptic ulcer.

87.     Rupture of a peptic ulcer is a serious medical need.

88.     Rupture of a peptic ulcer is also a catastrophic event presenting with sudden, severe abdominal pain due to chemical peritonitis from gastric ascites, signs of an acute surgical abdomen (rebound tenderness, guarding and rigidity), "upset stomach" (nausea and vomiting) and abdominal distention.

89.     If left untreated, as was the case for Alfonso Askew, a ruptured peptic ulcer will progress to shock syndrome and, eventually, death.

90.     The death certificate said that Alfonso Askew died due to pneumoperitoneum and gastric ascites with peritonitis and shock syndrome, due to prolonged rupture of the proximal duodenum and complication of peptic ulcer disease. All of these conditions are serious medical needs.

91.     The days after Mr. Askew was booked in the jail, prior to his untimely death, were spent in unrelenting pain and illness.

92.     During the time that he suffered, Mr. Askew repeatedly attempted to obtain medical care by making requests to Jail correctional officers and medical staff.

93.     Other people in custody in the Trumbull County Jail heard Mr. Askew crying as he suffered, and, upon information and belief, on at least one occasion, heard him saying, "Please don't let me die in here."

94.     During the time that Mr. Askew suffered, other people in custody in the Trumbull County Jail repeatedly attempted to alert the Jail staff to Mr. Askew's dire circumstances so that he would receive medical care.

14

95.     On at least one occasion, upon information and belief, people held in nearby cells banged on their doors and intercom buzzers, demanding help for Mr. Askew. Jail staff responded by warning them that if they continued to ring the intercom buzzers, they would be denied time out of their cells.

96.     Jail correctional and medical staff were aware of Mr. Askew's serious medical needs throughout these events and failed to provide him with medical care or access to medical care by a qualified practitioner.

97.     Had Mr. Askew been provided with timely access to adequate health care, and had he been provided timely with assessment, evaluation, and treatment for his serious medical needs by qualified higher-level practitioners, Alfonso Askew likely would not have died and instead would have lived.

98.     Defendants acted as gatekeepers that prevented and denied Mr. Askew access to adequate health care despite his obvious need for immediate medical attention.

99.     Defendants were aware throughout the events described in this complaint that Mr. Askew's symptoms and complaints were representative of serious medical needs.

100.    As a direct and proximate result of Defendants' conduct, Mr. Askew was subjected to serious and severe physical and emotional pain before his death.

101.    As a direct and proximate result of Defendants' conduct, Alfonso Askew suffered extensive physical and emotional pain and suffering and death.

### Inadequate Policies, Practices, Customs, Training, and Supervision by Trumbull County and Dr. Malvasi and/or Malvasi LLC

102.    At all times relevant to this case Malvasi LLC and/or Dr. Malvasi and Trumbull County were parties to an Agreement under which Malvasi LLC agreed to deliver medical services to people in custody in the Trumbull County Jail.

103.    Mr. Askew was never seen or treated by a medical doctor while at the jail.

104.    The Medical Assistant and Nurse defendants in this case performed duties beyond those for which they were licensed, certified, and/or registered and acted without appropriate supervision and guidance from higher-level practitioners and physicians while evaluating and treating Alfonso Askew at the Jail.

105.    On information and belief Defendant Dr. Malvasi and/or Malvasi LLC failed to provide adequate supervision to medical staff at the Trumbull County Jail and in that manner was deliberately indifferent to the serious medical needs of people in custody in the Jail, including Mr. Askew.

106.    The Medical Assistant and Nurse defendants improperly acted as gatekeepers preventing Alfonso Askew from receiving adequate health care from medical doctors or other appropriate higher-level practitioners.

107.    Likewise, CO Machingo and other Trumbull County Jail correctional officers improperly acted as gatekeepers preventing Alfonso Askew from accessing adequate health care from medical doctors or other appropriate higher-level practitioners, and failed to take steps to ensure his access to constitutionally-adequate medical care by failing to summon or send him for emergency medical treatment.

108.    Policymakers Trumbull County and Malvasi LLC and/or Dr. Malvasi were also deliberately indifferent to the serious medical needs of Mr. Askew by failing to train and supervise the medical staff and implement policies, practices, customs and usages that adequately addressed the obvious and known health and safety risks to people in custody in the Jail who have and demonstrate serious medical needs, including the symptoms demonstrated by Mr. Askew.

109.    Defendant Trumbull County had the responsibility and duty to monitor Dr. Malvasi and/or Malvasi LLC's performance as a contractor and ensure that the people in custody in the Trumbull County Jail were receiving adequate medical care. Defendant Trumbull County failed to do so.

110.    On information and belief, patient medical files and complaints at the Jail were not regularly reviewed by a physician or qualified health care practitioner and therefore patients were not properly referred for physician consultations, evaluations, and treatment.

111.    Defendants Dr. Malvasi and/or Malvasi LLC and Trumbull County were deliberately indifferent to the serious medical needs of people in custody in the Jail with life-threatening symptoms including Mr. Askew in part by requiring and permitting the Medical Assistant and Nurse Defendants to inappropriately assess the health status of patients and otherwise perform services beyond what they were legally authorized to perform pursuant to their licensing, certification, and/or registration.

112.    Defendants Trumbull County, Dr. Malvasi, and Malvasi LLC acted negligently, recklessly, wantonly, willfully, knowingly, intentionally and with deliberate indifference to the serious medical needs of Alfonso Askew.

113.    Defendants Trumbull County, Dr. Malvasi, and Malvasi LLC had policies, practices, customs, and usages that caused people in custody in the Jail to needlessly suffer and receive inappropriate and delayed treatment in the Jail. Such policies were the moving force behind the injuries suffered by Mr. Askew. By following such policies Defendants were deliberately indifferent to the serious medical needs of Mr. Askew.

114.    Mr. Askew's course of treatment was consistent with the treatment provided other people in custody in the Jail by Dr. Malvasi, Malvasi LLC, and Trumbull County, which displayed

deliberate indifference to people like Mr. Askew who suffered from serious medical needs.

115.    Trumbull County and Malvasi LLC knew that people in custody in the Jail with serious medical needs were experiencing unnecessary suffering and these defendants were deliberately indifferent to their suffering.

### Harm to Alfonso Askew, His Family, and His Estate

116.    As a direct and proximate result of Defendants' actions, Alfonso Askew suffered excruciating physical and psychological pain and trauma during his prolonged suffering and death.

117.    Mr. Askew was a kind and loving husband and father.  He was married to Stacey Askew at the time of his death, and was father to five children he had with her and to the two children he and Stacey had from previous relationships.

118.     Every member of his family has suffered an irreplaceable loss of a beloved father figure and a source of joy and companionship in all of their lives as well as any possibility of lost income or inheritance through him.

119.    When Alfonso Askew died, Stacey Askew and their children suffered the damages as a result of Defendants' wrongful conduct as described above, including but not limited to mental anguish, loss of services, loss of society, including loss of companionship, consortium, care, assistance, attention, guidance, and advice.

120.    As a further direct and proximate result of the negligence of Defendants and the wrongful death of Alfonso Askew, the Estate has incurred pecuniary losses, and funeral and burial expenses.

121.    Defendants acted negligently, recklessly, wantonly, willfully, knowingly, intentionally and with deliberate indifference to the serious medical needs of Alfonso Askew.

122.    All Defendants engaged in the conduct described herein within the course and scope of their employment.

123.    Defendants' actions and failures to act proximately caused Mr. Askew's, his Estate's, and his beneficiaries' injuries.

124.    Mr. Askew's, his Estate's, and his beneficiaries' injuries were a foreseeable result of Defendants' conduct.

125.    Defendants' actions were grossly negligent, unreasonable, and were done with intent, recklessness, deliberate indifference, malice, callousness, wantonly, oppressively, maliciously and sadistically, and violated clearly established law.

126.    Defendants are jointly and severally liable for the conduct described in this Complaint.

### COUNT 1
### 42 U.S.C. § 1983 and the U.S. Constitution
### against All Defendants

127.    All of the foregoing paragraphs are incorporated as though fully set forth here.

128.    All Defendants have, under color of state law, deprived Alfonso Askew of his rights, privileges, and immunities secured by the Fourth and Fourteenth Amendment to the U.S. Constitution as a pretrial detainee, including but not limited to the right to objectively reasonable and constitutionally-adequate medical care when incarcerated, and the right to be free from cruel and unusual punishment pursuant to the Eighth Amendment.

129.    All Defendants were deliberately indifferent to Alfonso Askew's serious medical needs. All Defendants failed to provide Mr. Askew with objectively reasonable and constitutionally-adequate medical care.

130.    Further, the actions of Phillip Malvasi, D.O., Medical Assistants Taylor Simmons, Bree Bright, Jess Johnson, as well as Carla Ahart, LPN, and Nurse and/or Medical Assistant JB,

and Correctional Officer Doug Machingo and other correctional officers, as alleged above, were taken pursuant to one or more interrelated de facto policies (even if not official written edicts), practices and/or customs of civil rights violations and unconstitutional practices of Trumbull County, Dr. Phillip Malvasi D.O. LLC, and/or Phillip Malvasi, D.O.

131. Trumbull County, Dr. Phillip Malvasi D.O. LLC, and/or Phillip Malvasi, D.O., at all times relevant herein, approved, authorized, and acquiesced in the unlawful and unconstitutional conduct of its respective employees and/or agents and consequently is directly liable for the acts of those agents, pursuant to 42 U.S.C. § 1983.

132. Trumbull County is responsible for the Trumbull County Jail, including the care and treatment of people—like Alfonso Askew—in custody therein. Trumbull County is required to ensure that the policies, practices, and customs of the Jail comply with federal and Ohio law concerning the treatment of persons in custody, including the right to constitutionally-adequate medical care.

133. Likewise, Phillip Malvasi D.O. LLC, and/or Phillip Malvasi, D.O., are responsible for medical care in the Trumbull County Jail for people—like Alfonso Askew—in custody therein. Phillip Malvasi D.O. LLC, and/or Phillip Malvasi, D.O. are required to ensure that the policies, practices, and customs in the Jail concerning medical care comply with federal and Ohio law concerning the treatment of persons in custody.

134. The actual and de facto policies, practices, and customs of Trumbull County, Dr. Phillip Malvasi D.O. LLC ("Malvasi LLC") and/or Phillip Malvasi, DO ("Dr. Malvasi"), and the failure of Trumbull County, Dr. Phillip Malvasi D.O. LLC ("Malvasi LLC") and/or Phillip Malvasi, DO ("Dr. Malvasi") to hire, train, supervise, monitor, discipline, counsel and/or control Jail correctional and medical staff conduct to ensure constitutionally-adequate provision of

medical care in the Trumbull County Jail for people who suffer serious medical needs—like Alfonso Askew—while in custody therein, demonstrate deliberate indifference to the serious medical needs of people who are in the Jail's custody.

135.    That the unconstitutional actions of the Defendants as alleged in this Complaint were part and parcel of a widespread jail policy, practice, and custom is further established by the involvement in, and ratification of, these acts by municipal supervisors and policymakers, officials, officers, and divisions of the Trumbull County Jail and Phillip Malvasi D.O. LLC ("Malvasi LLC") and/or by Phillip Malvasi, DO ("Dr. Malvasi").

136.    The aforementioned actual and de facto policies, practices, and customs include a pattern of acts of deliberate indifference to serious medical needs, causing harmful consequences to people who are in the Jail's custody.

137.    These interrelated policies, practices, and customs, individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendants to commit the acts against Alfonso Askew alleged in this complaint.

138.    The actual and de facto policies, practices, and customs of Trumbull County, Dr. Phillip Malvasi D.O. LLC ("Malvasi LLC") and/or Phillip Malvasi, DO ("Dr. Malvasi"), and the failure of Trumbull County, Dr. Phillip Malvasi D.O. LLC ("Malvasi LLC") and/or Phillip Malvasi, DO ("Dr. Malvasi") to hire, train, supervise, monitor, discipline, counsel and/or control Jail correctional and medical staff conduct, were inadequate and unreasonable.

139.    The conduct of Defendants Trumbull County, Malvasi LLC, Phillip Malvasi, D.O., Medical Assistants Taylor Simmons, Bree Bright, Jess Johnson, as well as Carla Ahart, LPN, and Nurse and/or Medical Assistant JB, and Correctional Officer Doug Machingo was a direct and

proximate cause of Alfonso Askew's injuries, including pain and suffering, emotional trauma, pre-death agony, death, and lost chance for treatment and survival.

140.    These Defendants directly and proximately caused injuries and damages to Alfonso Askew, his family, and his Estate.

### COUNT 2
### Ohio State Law —Medical Malpractice by Medical Staff

141.    All of the foregoing paragraphs are incorporated as though fully set forth here.

142.    After Alfonso Askew was admitted to the care and custody of the Jail, Defendant Medical Assistants Taylor Simmons, Bree Bright, Jess Johnson, and Medical Assistant/Nurse JB, and LPN Carla Ahart, and Phillip Malvasi, D.O. ("Dr. Malvasi") breached their duty to provide medical care to Mr. Askew consistent with standard medical practice, all in violation of Ohio law.

143.    Dr. Malvasi failed to ensure that adequate policies, practices, and customs were in place in the Jail to appropriately assess, evaluate, and treat people in custody who have serious medical needs, including Alfonso Askew.

144.    Defendants Dr. Malvasi, Medical Assistants Taylor Simmons, Bree Bright, Jess Johnson, Medical Assistant/Nurse JB, and LPN Carla Ahart breached their duty to provide medical care to Alfonso Askew consistent with standard medical practice, in violation of Ohio law.

145.    Defendants failed to use reasonable care in assessing, evaluating, and treating Mr. Askew's serious medical needs, and each Defendant breached their duty of care for Mr. Askew.[1]

146.    The conduct of Defendants Medical Assistants Taylor Simmons, Bree Bright, Jess Johnson, Medical Assistant/Nurse JB, LPN Carla Ahart, and Phillip Malvasi, D.O., was a direct

---

[1] Affidavit of Merit by Jeffrey E. Keller, MD, FACCP, FACEP, is attached.

and proximate cause of Alfonso Askew's injuries, including pain and suffering, emotional trauma, pre-death agony, death, and lost chance for treatment and survival.

147.    Defendants of Defendants Medical Assistants Taylor Simmons, Bree Bright, Jess Johnson, Medical Assistant/Nurse JB, LPN Carla Ahart, and Phillip Malvasi, D.O. directly and proximately caused injuries and damages to Alfonso Askew, his family, and his Estate.

**COUNT 3**
**Ohio State Law — Negligence by Malvasi LLC and Dr. Malvasi**

148.    All of the foregoing paragraphs are incorporated as though fully set forth here.

149.    Defendants Dr. Phillip Malvasi D.O. LLC ("Malvasi LLC") and Phillip Malvasi, DO ("Dr. Malvasi") and its/his employees and agents owed a duty of reasonable care to Alfonso Askew.

150.    Malvasi LLC and/or Dr. Malvasi are responsible for medical care in the Trumbull County Jail for people—like Alfonso Askew—in custody therein. Malvasi LLC and/or Dr. Malvasi have a duty to ensure that the policies, practices, and customs in the Jail concerning medical care are not negligent. Defendants Malvasi LLC and Dr. Malvasi breached this duty.

151.    Defendants Malvasi LLC and Dr. Malvasi had a duty to provide qualified personnel who were adequately trained and supervised pursuant to appropriate policies and procedures to perform medical services at the Jail and a duty to use reasonable care in determining the adequacy of treatment and referral protocols, qualifications and adequate performance of its/his contractors, agents and employees who provide medical services.  Defendants Malvasi LLC and Dr. Malvasi breached this duty.

152.    Defendants Malvasi LLC and Dr. Malvasi had a duty to establish appropriate policies and procedures concerning the medical treatment of people in custody in the Jail. Defendants Malvasi LLC and Dr. Malvasi breached this duty.

153.    Defendants Malvasi LLC and Dr. Malvasi, and their contractors, employees, and agents had a duty of care to Alfonso Askew and breached this duty by failing to provide appropriate medical care and treatment under the circumstances.

154.    Defendants Malvasi LLC and Dr. Malvasi are liable under the doctrine of respondeat superior for the negligent conduct of their employees and agents as alleged in this Complaint.

155.    The conduct of Defendants Malvasi LLC and Dr. Malvasi was a direct and proximate cause of Alfonso Askew's injuries, including pain and suffering, emotional trauma, pre-death agony, death, and lost chance for treatment and survival.

156.    Defendants Malvasi LLC and Dr. Malvasi directly and proximately caused injuries and damages to Alfonso Askew, his family, and his Estate.

## COUNT 4
## Ohio State Law — Negligence: Reckless Conduct by Jail Employee

157.    All of the foregoing paragraphs are incorporated as though fully set forth here.

158.    Defendant Machingo, as a correctional officer in the Trumbull County Jail, breached his duty to provide access to medical care and to protect Alfonso Askew from injury consistent with standard correctional practice, all in violation of Ohio law.

159.    Defendant Machingo acted negligently and recklessly when he violated his duty to exercise due care for Alfonso Askew, and he committed the acts alleged in this Complaint in a reckless, willful and/or wanton manner while working as a correctional officer for Trumbull County.

160.    Defendant Machingo recklessly breached his duty of care to Alfonso Askew and directly and proximately caused injuries and damages to Alfonso Askew, his family, and his Estate.

161.    The conduct of Defendant Machingo was a direct and proximate cause of Alfonso Askew's injuries, including pain and suffering, emotional trauma, pre-death agony, death, and lost chance for treatment and survival.

### COUNT 5
### Ohio State Law – Wrongful Death Under Ohio Rev. Code § 2125.02
### against All Defendants

162.    All of the foregoing paragraphs are incorporated as though fully set forth here.

163.    Defendants' actions caused the wrongful death of Alfonso Askew resulting in damages recoverable under Ohio Rev. Code § 2125.02.

164.    Decedent Alfonso Askew is survived by his beneficiaries, who are represented by Plaintiff in this action.

165.    Defendants Trumbull County, Dr. Phillip Malvasi D.O. LLC, Phillip Malvasi, D.O., Medical Assistants Taylor Simmons, Bree Bright, Jess Johnson, as well as Carla Ahart, LPN, and Nurse and/or Medical Assistant JB, and Correctional Officer Doug Machingo directly and proximately caused Alfonso Askew's wrongful death and directly and proximately caused his Estate and beneficiaries to suffer, and they will continue to suffer, *inter alia*, pecuniary loss, loss of his aide, comfort, consortium, society, companionship, guidance, protection, financial and other support, as well as the grief and sorrow from the loss of the love and affection of and for their loved one, and they have otherwise suffered damages all to their detriment.

### COUNT 6
### Ohio State Law – Survivorship Claim Under Ohio Rev. Code § 2305.21
### against All Defendants

166.    All of the foregoing paragraphs are incorporated as though fully set forth here.

167.    As a direct and proximate result of the negligent, willful, wanton, reckless, and/or outrageous conduct of Defendants Trumbull County, Dr. Phillip Malvasi D.O. LLC, Phillip Malvasi, D.O., Medical Assistants Taylor Simmons, Bree Bright, Jess Johnson, as well as Carla

25

Ahart, LPN, and Nurse and/or Medical Assistant JB, and Correctional Officer Doug Machingo as alleged herein, individually and/or jointly, Alfonso Askew was caused to suffer severe and serious mental anguish and severe conscious physical pain and suffering prior to his death, for which compensation is sought.

### JURY DEMAND

168.    Plaintiff demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

A.  Award Plaintiff compensatory damages in an amount to be shown at trial;

B.  Award punitive damages against all Defendants except the County in an amount to be shown at trial;

C.  Award Plaintiff reasonable attorney's fees, costs, and disbursements;

D.  Award Plaintiff pre and post judgment interest;

E.  Grant Plaintiff such additional relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Jacqueline Greene*
Jacqueline Greene (0092733)
Sarah Gelsomino (0084340)
FRIEDMAN GILBERT + GERHARDSTEIN
50 Public Square, Suite 1900
Cleveland, OH  44113
Tel: (216) 241-1430
Fax: (216) 621-0427
jacqueline@FGGfirm.com
sarah@FGGfirm.com

*Counsel for Plaintiff*